IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
)
v. ) Case No. 1:13-CR-51-GBL
)
DAVID J. RAINSBERGER, )
)
Defendant. )
)

FEB - 6 2013

## STATEMENT OF FACTS

The United States and the defendant, David J. Rainsberger, agree that the allegations set forth in the criminal information and the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt:

1. The defendant currently resides within the Eastern District of Virginia.

2. Since in or about January 2007, the defendant has been an officer and employee of the Diplomatic Security Service of the United States Department of State. Prior to that, the defendant was employed by the Transportation Security Administration.

3. From in or about September 2009 until in or about September 2011, the defendant served as an assistant regional security officer for investigations at the United States embassy in Kingston, Jamaica (the "Embassy"). In that position, his responsibilities included investigating Jamaican nationals applying for visas to enter the United States and reporting the findings from those investigations to Embassy officials, who relied on those findings in making decisions whether to grant or deny a visa.

1

4. Sometime after April 2010, the defendant developed a close and personal relationship with D.B., a citizen of Jamaica who was a well-known musician both within Jamaica and elsewhere, and J.J.G., a citizen of the United Kingdom residing in Jamaica who was D.B.'s business manager. At the time the defendant began his relationship with D.B. and J.J.G., D.B. had been declared ineligible for a visa to enter the United States on account of accusations that he had been involved in criminal activity. D.B. and J.J.G. desired to have D.B.'s visa ineligibility removed so that D.B. could travel to the United States and take advantage of lucrative performance and recording opportunities.

5. Within Jamaica, the defendant frequently accompanied D.B. and J.J.G. to nightclubs, concerts, and parties, which other Embassy law enforcement officials also frequently attended. On account of his relationship with D.B. and J.J.G., the defendant received, free of charge, admission to nightclubs and backstage access to concerts at which D.B. was performing. D.B., along with another well-known Jamaican musician, also hosted and paid for a birthday gathering for the defendant and several of his friends.

6. In or about June 2011, the defendant reported to Embassy officials adjudicating D.B.'s pending application for a visa to enter the United States that, based on his investigation of D.B. as the assistant regional security officer for investigations and that of other Embassy law enforcement officials, D.B.'s prior visa ineligibility should be eliminated. At no time did the defendant disclose to these officials the extent of his close and personal relationship with D.B. or J.J.G. or that he had received things of value due to his relationship with D.B. and J.J.G.

7. On or about June 21, 2011, relying primarily on the defendant's representations regarding his investigation of D.B., Embassy officials granted D.B.'s application for a visa to enter the United States. On or about June 30, 2011, the defendant contacted officials at the

United States Department of Homeland Security to facilitate D.B.'s entry into the United States at JFK International Airport in New York City.

8.     On or about July 1, 2011, on his way back to Jamaica from an official trip to London, the defendant traveled to New York City to join D.B. and J.J.G. in their celebration of D.B.'s return to the United States. While in New York City, D.B. appeared as a guest on a radio show and publicly thanked the United States government, the defendant, and others for their assistance in helping him obtain a visa to enter the United States. Also while in New York City, D.B. purchased the defendant shoes, clothing, and two Movado brand luxury watches worth approximately $2,500. The defendant received the watches, and other things of value, from D.B. and J.J.G. on account of his close and personal relationship with D.B. and J.J.G. and on account of his assistance in having influenced the Embassy officials to grant D.B. a visa to enter the United States.

9.     In or about August 2011, the defendant developed a close and personal relationship with K.J., a Jamaican national. The defendant, who was then married, also began a romantic relationship with K.J., and by in or about January 2012 the defendant and K.J. had become engaged to be married.

10.    On or about August 9, 2011, at the defendant's request, Embassy officials expedited a visa for J.J.G. to travel from Jamaica to the United States. J.J.G. was then the subject of a local criminal investigation within Jamaica and used his visa to travel to the United States to avoid appearing at a court hearing scheduled on the Jamaican charges. At the time J.J.G.'s visa was expedited, the defendant failed to disclose to Embassy officials the extent of his close and personal relationship with J.J.G. Approximately three days later, J.J.G. purchased for

the defendant airline tickets for the defendant to travel to Guyana and Montreal to attend D.B.'s concerts there; the defendant, however, never used the tickets.

11. At various times in 2011 and while posted at the Embassy, the defendant also influenced decisions to grant or deny U.S. visas to other Jamaican musicians and local Jamaican law enforcement officers based on the recommendations of J.J.G, which at times included information about undisclosed criminal activity provided by J.J.G. In influencing these visa decisions, the defendant again failed to disclose to Embassy officials the extent of his close and personal relationship with D.B. and J.J.G.

12. In or about September 2011, the defendant was transferred to the United States embassy in Tel Aviv, Israel, where he also served as an assistant regional security officer.

13. On or about February 2, 2012, while in Israel and on account of his official position, the defendant completed, certified as true, complete, and correct, and submitted to the United States a U.S. Office of Personnel Management Standard Form 86, Questionnaire for National Security Positions ("SF86"). The defendant willfully and knowingly made false statements on the SF86 by answering "no" to the question, "Do you have, or have you had, close and/or continuing contact with a foreign national within the last seven (7) years?" The defendant intentionally answered this question falsely because he was, at the time, engaged to be married to Jamaican national K.J. and had had a close and continuing relationship with D.B. and J.J.G. during the preceding seven years. In a follow-up interview with federal agents regarding his answers to the questions on the SF86, the defendant again specifically and intentionally failed to disclose his relationship with K.J.

14. During the time period relevant to these offenses, the defendant repeatedly accessed without authority, or exceeded his authority to access, Department of State visa and

4

passport databases, including CCD and PIERS. The unauthorized accesses included queries related to K.J., D.B., J.J.G., and associates of these individuals, and queries of U.S. government employees conducted by the defendant for personal reasons.

15. The acts taken by the defendant in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and not because of accident, mistake, or other innocent reason.

        Respectfully submitted,

        Neil H. MacBride
        United States Attorney

By:

Paul J. Nathanson
G. Zachary Terwilliger
Assistant United States Attorneys
Eastern District of Virginia
Counsel for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: paul.nathanson@usdoj.gov

5

Defendant's Stipulation and Signature

After consulting with my attorney and pursuant to the plea agreement I entered into this day with the United States, I hereby stipulate that the above statement of facts is true and accurate. I further stipulate that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 2/6/2013

David J. Rainsberger
Defendant

Defense Counsel's Signature

I am David J. Rainsberger's attorney. I have carefully reviewed the above statement of facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 2/6/13

Nina J. Ginsberg
Counsel for the Defendant